IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ANTHONY E. B.,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　)　　Case No. 23-CV-132-JFJ
　　　　　　　　　　　　　　　　　　)
MARTIN J. O'MALLEY,[1]　　　　　　　)
Commissioner of Social Security,　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　)

**OPINION AND ORDER**

Plaintiff Anthony E. B. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.　　General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental

---

[1] Effective December 20, 2023, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national

economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

On November 9, 2020, Plaintiff, then a 44-year-old male, protectively applied for a period of disability and disability insurance benefits under Title II. R. 218-221. Plaintiff alleges he has been unable to work since an amended onset date of July 21, 2018, due to a 2015 stroke, difficulties walking and standing, high blood pressure, and diabetes. R. 46, 248. Plaintiff's claim for benefits was denied initially and on reconsideration. R. 132-138, 140-145. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on April 26, 2022. R. 40-73, 146-147. The ALJ issued a decision on May 3, 2022, denying benefits and finding Plaintiff not

3

disabled because he could perform other work existing in the national economy. R. 18-34. The Appeals Council denied review, and Plaintiff appealed to this Court. R. 7-9; ECF No. 2.

The ALJ found Plaintiff's date last insured was March 31, 2021. R. 20. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from July 21, 2018, through his date last insured of March 31, 2021. R. 21. At step two, the ALJ found that Plaintiff had the following severe impairments: status post remote vascular insult to the brain in 2015 with return to work in 2019, right lower extremity neuropathy, diabetes mellitus, hypertension, obesity, neurocognitive disorder, and depressive disorder. *Id.* The ALJ found Plaintiff's low back pain to be non-medically determinable. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 21-25. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in all four areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. R. 23-24.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform "light work as defined in 20 C.F.R. 404.1567(b)" with the following limitations:

> occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl, as those terms are defined in the Selected Characteristics of Occupations (SCO);[2] frequently reach, handle, finger, and feel, with the dominant right upper extremity; no more than occasional

---

[2] The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") is the companion publication to the DOT. *See* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("In making disability determinations, [the Social Security Administration] rel[ies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.").

4

>
> exposure to dusts, odors, gases, and poor ventilation; no more than occasional exposure to hazards, such as dangerous moving machinery and unprotected heights; no commercial driving; can understand, remember, and carry out simple and detailed, but not complex tasks; can adapt to occasional changes in work processes and environment; no production rate pace, but can perform end of the day goals; and occasional interaction with coworkers, supervisors, and the general public.

R. 25. At step four, the ALJ found Plaintiff was unable to perform any past relevant work. R. 32. However, based on the testimony of a vocational expert ("VE"), the ALJ found at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, such as Mail Sorter, Merchandise Marker, Routing Clerk, Addresser, Document Preparer, and Table Worker. R. 33. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled from July 21, 2018, through March 31, 2021, the date last insured. R. 33-34.

### III. Issues

Plaintiff raises two points of error in his challenge to the denial of benefits: (1) the ALJ failed to properly assess the medical and non-medical opinion evidence; and (2) the ALJ failed to resolve an inconsistency between the VE's testimony and the DOT regarding whether Plaintiff could perform work in the national economy at step five. ECF No. 7. The Court reverses the ALJ's decision based on the issues raised in the first allegation of error. Specifically, the Court finds the ALJ failed to properly assess the medical opinion of consultative mental examiner, Minor Gordon, Ph.D. The Court does not address Plaintiff's other allegations of error.

### IV. Analysis – ALJ's Analysis of Dr. Gordon's Opinion was Legally Flawed

Plaintiff contends the ALJ committed reversible error, because the ALJ failed to properly evaluate the persuasiveness of Dr. Gordon's medical opinion. ECF No. 7 at 7-8. For claims filed after March 27, 2017, such as Plaintiff's claim, 20 C.F.R. § 404.1520c provides that the ALJ will

no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ now need only articulate how persuasive she finds each medical source's opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is based primarily on an opinion's supportability and consistency, and the ALJ must explain how she considered those two factors. 20 C.F.R. § 404.1520c(b)(2). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ may, but is typically not required to, discuss other considerations that may affect the persuasiveness of a medical opinion, such as the source's relationship with the claimant, the source's area of specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b)(2)-(c).

      Dr. Gordon completed a psychological consultative evaluation in April 2021 to determine Plaintiff's psychological and intellectual functioning. R. 436-439. At the evaluation, Plaintiff reported that he had never been treated by any kind of mental health professional. R. 436. Dr. Gordon observed Plaintiff to be clean, groomed, and neatly dressed. R. 437. Plaintiff was alert and attentive with appropriate manner and attitude, and he maintained good eye contact throughout the evaluation. *Id.* However, Plaintiff had a depressive affect, was disoriented to time, person, and place, and exhibited a sad facial expression. *Id.* Dr. Gordon estimated that Plaintiff's intelligence was below average and that his social-adaptive behavior was in line with an individual

with a functionally low intellect and significant memory impairment. *Id.* Plaintiff's thought processes were coherently organized but slow. *Id.*

Dr. Gordon found Plaintiff's immediate retention and recall adequate, his short-term memory impaired, and his long-term memory intact. *Id.* Dr. Gordon administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") to Plaintiff, and Plaintiff scored a full-scale IQ score of 68, which put him in the high part of the mild range of intellectual disability. *Id.* On the Wechsler Memory Scale-IV, Plaintiff scored in the mild range of impairment in the subtests of Visual Memory and Delayed Memory, but his scores on Immediate Memory and Auditory memory fell within the average range. R. 438. Based on the evaluation, Dr. Gordon found diagnostic impressions of major depressive disorder, mild to moderate, secondary to his general medical condition; mild intellectual disability; and significant memory impairment, as reflected by the results of the Wechsler Memory Scale-IV. *Id.* Dr. Gordon opined that Plaintiff would not be able to pass judgement in a work situation or communicate comfortably in social circumstances. R. 437. Dr. Gordon further opined that Plaintiff would not be able to manage benefit payments in his own interest. R. 439.

The ALJ thoroughly summarized Dr. Gordon's examination and found Dr. Gordon's "opinion" that Plaintiff suffered from mild to moderate major depressive disorder and intellectual disorder "not persuasive." R. 31. The ALJ found the opinion "inconsistent" with Plaintiff's normal psychiatric evaluations and mostly negative and normal depression screenings. *Id.* (citing R. 446, 456, 471, 511, 514). The ALJ further noted that Dr. Gordon's opinion that Plaintiff suffered from an intellectual disability was unsupported by the record, specifically noting Plaintiff had no history of special education, had completed two years of college, and had previously performed skilled work. *Id.*

7

The Court finds the ALJ committed reversible error in her evaluation of Dr. Gordon's psychological opinion, as the ALJ failed to discuss the persuasiveness of the only medical opinion Dr. Gordon offered. A medical opinion is "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in enumerated abilities, including the ability to perform the physical or mental demands of work. 20 C.F.R. § 404.1513(a)(2). A medical opinion does not include "judgments about the nature and severity of [a claimant's] impairments, [his] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3) (defining such evidence as "other medical evidence"). The regulations do not require the ALJ to articulate the persuasiveness of "other medical evidence." 20 C.F.R. §§ 404.1513(a)(3), 404.1520c.

Here, the ALJ found Dr. Gordon's diagnoses that Plaintiff suffered from mild to moderate major depressive disorder and mild intellectual disability "not persuasive." R. 31. However, a diagnosis is considered "other medical evidence" and does not have to be evaluated under 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1513(a)(3).

Dr. Gordon's evaluation did, however, contain a medical opinion that the ALJ was required to evaluate. Dr. Gordon opined that, due to Plaintiff's low intellect and significant memory impairment, Plaintiff would not be able to pass judgement in a work situation or communicate comfortably in social circumstances. R. 437. This statement is a "medical opinion" under the regulations. *See* 20 C.F.R. § 404.1513(a)(2)(ii). The ALJ did not mention this opinion in her decision, nor did the ALJ evaluate the persuasiveness, supportability, or consistency of this opinion as required under the regulations. *See* 20 C.F.R. § 404.1520c ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions . . .

in your determination or decision."). *See also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, at 5858, 2017 WL 168819 (Jan. 18, 2017) (noting that this is the "minimum level of articulation" necessary to "provide sufficient rationale for a reviewing adjudicator or court" to understand the ALJ's persuasiveness analysis). This was error.

The Commissioner argues the ALJ committed no error because she thoroughly discussed Dr. Gordon's examination findings, allowing the Court to follow the ALJ's reasoning even if Dr. Gordon's opinion was not properly evaluated. ECF No. 11 at 11. The Commissioner ignores the fact that the ALJ was evidently evaluating Dr. Gordon's diagnosis, not the opinion. To the extent the Commissioner argues the ALJ implicitly evaluated Dr. Gordon's actual opinion, the Court rejects this argument. The ALJ stated she was considering "this opinion," immediately after summarizing Dr. Gordon's diagnosis. R. 31. The Court finds this reading more compelling, considering that the ALJ repeatedly evaluated the persuasiveness of objective medical evidence and other medical evidence, which is not required under 20 C.F.R. § 404.1520c. R. 26 (concluding state agency reviewer's notation that Plaintiff reported having memory and concentration issues was "opinion" and finding it was "somewhat persuasive") (citing R. 434); R. 31-32 (concluding examination findings from physical and occupational therapist were "opinion" and finding them "unpersuasive" and "inconsistent" with record evidence) (citing R. 516-524). *See* 20 C.F.R. § 404.1513(a)(1), (3).

The Court further finds this error was not harmless. Harmless error doctrine applies only in the "exceptional circumstance" where the court "could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). To the extent any harmless-error determination "rests on legal or evidentiary matters not considered by the ALJ, it

risks violating the general rules against post hoc justification of administrative action." *Id.* The Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (citing *Allen*, 357 F.3d at 1145). The Court cannot affirm any "post hoc effort to salvage the ALJ's decision [because it] would require [the court] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen*, 357 F.3d at 1142.

To find harmless error here, the Court would have to weigh Dr. Gordon's opinion in the first instance and determine its persuasiveness. This duty belongs to the ALJ, not the Court, and the Court will not usurp that duty here. Accordingly, remand is required for proper evaluation of Dr. Gordon's opinion. *See Daniel W. v. Kijakazi*, No. 20-CV-525-JFJ, 2022 WL 834952, at *4-6 (N.D. Okla. Mar. 21, 2022) (finding the ALJ's failure to evaluate the persuasiveness of a medical opinion was not harmless error); *Jamie H. v. Kijakazi*, No. 20-cv-00634-SH, 2022 WL 834962, at *4-6 (N.D. Okla. Mar. 21, 2022) (same); *Stacy L. C. v. Saul*, No. 20-1064, 2021 WL 147254, at *4-5 (D. Kan. Jan. 15, 2021) (same).

V.  **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 28th day of March, 2024.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**